IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    Case No. 20-10066-2-JWB

GARY A. LOWE, JR.,

      Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant's motion to withdraw guilty plea.  (Doc. 224.)  The motion has been fully briefed and is ripe for decision.  (Doc. 225.)  The court held a hearing on the motion on September 15, 2022.  For the reasons stated herein, Defendant's motion is DENED.

**I.**    **Procedural History and Background**

On October 6, 2020, Defendant was charged by way of indictment with three counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a), one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924 (c)(1)(A), and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.)  The indictment also included charges against co-Defendants Jamie Whitfield and Matthew Crawford.  The charges against Defendant stem from the execution of a search warrant on October 17, 2018, at 2421 W Martha Street, in Wichita, Kansas.  When law enforcement arrived, they found Defendant and Whitfield in the kitchen with marijuana and a loaded Glock 43 9mm handgun.  A kitchen cabinet contained a 432-gram bag of methamphetamine.  In a tub behind Defendant, officers found another loaded handgun, two digital scales, and mail addressed to Defendant.  In the master bedroom, officers located a safe containing a car title in Defendant's

1

name and $24,000 in US currency.  The bedroom also contained many additional firearms, large quantities of methamphetamine and heroin, and Defendant's shorts containing his wallet and identification.  Defendant was arrested and the illegal items were seized by officers.  (*See* Doc. 211 at 5.)

At his initial appearance, Defendant was appointed Lynn Burke, counsel from the Federal Public Defender. (Docs. 25, 32.)  Jury trial was initially set for January 11, 2021.  (Doc. 36.)  However, a joint motion to continue the matter was filed by Defendant's counsel on November 30, 2020. (Doc. 43.)  The motion indicated that Defendant joined in the continuance and did not object to the tolling of speedy trial.  An order granting the motion to continue was entered and trial was continued to April 5, 2021.  (Doc. 44.)

On December 21, 2020, despite being represented by counsel, Defendant filed a pro se motion to dismiss. (Doc. 46.)  Motions for new counsel were filed by Defendant and his counsel, Lynn Burke.  (Docs. 47, 48.)  At a hearing on January 12, 2021, the court heard the motions for new counsel on the record and they were denied.  During that hearing, Defendant stated that he was upset with his counsel for not filing a motion to dismiss due to a lack of probable cause.  (Doc. 55 at 9-11.)  The court advised Defendant that such a motion would not be granted in light of the grand jury finding and the allegations in the indictment.  Defendant further argued that his attorney had failed to provide him with discovery.  After discussion with counsel, however, it was clear that the case was in the early stages of the proceedings, with the parties still exchanging discovery and determining how to provide that discovery to Defendant in the midst of the COVID-19 pandemic.  The court determined that there was not an actual conflict and Burke continued her representation of Defendant. On January 29, the parties filed a joint agreement regarding discovery

which identified the discovery that was provided to Defendant and the redactions made due to personal information of certain witnesses.  (Doc. 56.)

On February 1, Defendant filed another pro se motion in which he challenged this court's jurisdiction.  (Doc. 57.)  The court struck the motion from the record.  (Doc. 58.)  On February 4, AFPD Kirk Redmond entered an appearance for Defendant.  (Doc. 59.)  On February 5, co-Defendant Crawford filed a motion to continue.  (Doc. 61.)  Co-Defendant Whitfield agreed with the need for a continuance; however, Defendant Lowe objected to the continuance.  The motion sought a continuance due to the extensive discovery produced, the need to interview and locate additional witnesses, the difficulties in reviewing discovery with clients due to COVID-19, and the need for additional time for counsel's effective preparation.  (*Id.*)  Although Defendant objected and the court acknowledged the objection, the court granted the continuance based on the reasons stated by counsel, the need to keep the co-Defendants joined for trial, and the continuing difficulties caused by COVID-19.  (Doc. 62 at 1-2.)  Trial was continued to June 7, 2021.

On May 20, approximately three months after his entry of appearance, AFPD Kirk Redmond sought withdrawal from the case.  (Doc. 81.)  The court held a hearing on the motion.  (Doc. 85.)  During the hearing, defense counsel stated that Defendant had deep-set beliefs regarding areas of the law with which defense counsel at the FPD did not agree.  (Doc. 111 at 7.)  The record of the hearing reflects that Defendant believed his attorneys should file certain pretrial motions in his case including a motion to suppress and motion for an omnibus hearing.  The court attempted to explain to Defendant that defense counsel was well qualified and would file any pretrial motions that were appropriate.  During the hearing, Defendant continued to interrupt the undersigned and had to be instructed to stop arguing and stop talking.  (*Id.* at 10.)  Ultimately, the court granted the FPD's motion to withdraw and appointed CJA attorney James Pratt.  (Doc. 86.)

On May 27, Mr. Pratt filed a motion to continue due to his recent entry into the case, his need to review all of the discovery, and to consult with Defendant in preparation for trial. The motion stated that Defendant was out on bond and understood the need for the continuance and agreed with the same. (Doc. 89.) The court granted the motion and trial was continued until August 2. (Doc. 91.) On June 8, Matthew Crawford pleaded guilty to being a user of controlled substances in possession of a firearm. (Doc. 99.) He was sentenced on September 9 to three years' probation. (Doc. 123.) On both July 9 and September 20, Mr. Pratt filed motions to continue. (Docs. 109, 128.) The motions were unopposed and both indicated that Defendant did not object and joined in the request for a continuance. Defendant continued to be on bond and defense counsel needed additional time to review discovery and prepare for trial. Defendant's trial was continued. (Docs. 110, 129.) Trial was set for January 10, 2022.

On October 26, Jamie Whitfield pleaded guilty to counts 1 and 2 of an information - user in possession of a firearm and possession with intent to distribute methamphetamine. (Doc. 135.) Whitfield was sentenced to 5 years' probation on July 7, 2022. (Doc. 222.) Shortly after Whitfield's plea, Defendant filed several pro se motions, and also claimed Mr. Pratt was ineffective. (Docs. 136, 137, 138.) The pro se motions unrelated to claims of ineffective assistance were stricken. (Doc. 142.) On November 9, 2021, Mr. Pratt filed his own motion to withdraw. (Doc. 143.) The court held a hearing on November 29. At the hearing, the court initially addressed Defendant's pro se filings that were stricken from the record. The court noted that Defendant was repeatedly frustrated with his prior counsel and current counsel for not filing the motions but the court explained that Defendant's motions lacked merit. (Doc. 156 at 5.) The court informed Defendant that it had jurisdiction over the matter based on the charges under federal law. The court further discussed that Defendant's disputes of fact as to the evidence were not appropriate

for pretrial determination.  (*Id.* at 5-13.)  The court then took up the motions to withdraw.  Defense counsel explained his continued difficulties with Defendant and Defendant's disagreements with defense counsel's interpretation of law.  Defendant also was given an opportunity to speak on the record and expressed his belief that a motion to suppress should be filed on the basis that the search warrant was defective, including his belief that the warrant was forged because there were multiple copies.  The court disagreed and explained to Defendant that the motions he was insistent that his defense counsel file all lacked merit.  The court denied the motions to withdraw after finding that there was not an actual conflict.  (*Id.* at 52-55.)  The court further stated that Defendant had substantially and unreasonably contributed to the breakdown in communications.  (*Id.* at 54.)

On December 16, Defendant's counsel filed an unopposed motion to continue the trial setting for thirty days.  (Doc. 149.)  The motion stated that Defendant was advised of the request and agreed to the motion.  The motion stated that counsel needed additional time with Defendant and to interview and evaluate potential witnesses.  The motion was necessary in part due to the delay caused by the issues raised in the motions that were recently decided.  Counsel reported that the relationship with Defendant was improving.  (*Id.* at 3.)  The court granted the motion and continued the trial to February 7.  (Doc. 151.)  On January 19, 2022, during a status conference, Defendant reasserted his dissatisfaction with Mr. Pratt.  Defendant then moved to represent himself and Mr. Pratt renewed his own motion to withdraw.

Based on Defendant's oral motion, the court began a hearing as required under *Faretta v. California*, 422 U.S. 806 (1975), to ensure that Defendant was knowingly and intelligently waiving his right to counsel and was aware of the dangers of self-representation.  Defendant was placed under oath.  Initially, after a request by the government, the court inquired as to whether Defendant had been presented with a plea offer the government had made to defense counsel.  Defendant

admitted that he had been presented with the plea offer and rejected the same.  The court then advised Defendant of his rights and also thoroughly explained the charges in the indictment and the potential penalties for those charges.  After this discussion, Defendant asked the court if he would receive a ruling on his pro se motions that had been struck from the record.  The court informed Defendant that the motions deadline had passed.  Defendant then stated that he just needed another attorney and that he could not work with Mr. Pratt.  The court asked Defendant if he was withdrawing his motion to represent himself and Defendant stated that he was.  The court then allowed Defendant an opportunity to find his own counsel with whom he could work.  (Doc. 161.)  Defendant requested a continuance of the current trial date so that he could locate counsel.  The court granted the motion and continued the trial to February 22.  The court denied Mr. Pratt's motion to withdraw at that time.  On January 27, the government filed an amended notice of the penalty for count 4 of the indictment.  (Doc. 167.)  According to the amended notice, Defendant faced a term of imprisonment of not less than 25 years if convicted on count 4 of the indictment, which charged a violation of 18 U.S.C. § 924(c), because Defendant had previously been convicted of the same charge in a prior case.

On February 8, Mr. Pratt filed several motions in limine in accordance with the trial scheduling order.  (Docs. 169, 170, 171.)  On February 10, 2022, the court held a hearing to inquire about counsel.  While Defendant had talked with several attorneys, he could not afford to hire his own counsel.  The court asked Defendant which attorneys he believed he could work with.  Defendant specifically named O'Hara and two other attorneys.  After hearing from Defendant, the court appointed Charles O'Hara as substitute counsel under the CJA.  (Docs. 174, 175.)  Mr. O'Hara is not a panel attorney; however, the court exercised its discretionary authority in appointing Mr. O'Hara under the CJA as substitute counsel in the hopes that Defendant would be

able to work with Mr. O'Hara - his hand-picked attorney of choice – and get the case to trial or other resolution in a timely fashion .  Mr. O'Hara then filed a motion to continue based on his recent entry in the case and his need to review discovery and prepare for trial.  Defendant did not oppose the motion and "personally agree[d]" to the continuance.  (Doc. 176 at 1.)  The motion was granted and trial was continued to April 18.  (Doc. 178.)  On April 11, defense counsel filed a motion to continue.  The court held a hearing on April 12 on the outstanding motions in limine and the motion to continue.  During that hearing, the court ruled on the outstanding motions and granted the continuance.  Trial was set for June 21.  (Doc. 192.)  The court also allowed Mr. O'Hara to file the motions that Defendant has repeatedly raised throughout the proceedings.  Defense counsel then filed a number of motions, which included the previously filed pro se motions.  (Docs. 195, 196, 197, 198, 199, 200.)  On May 25, the court denied the motions.  (Doc. 211.)  The parties prepared for trial by submitting their exhibits to the court and filing proposed jury instructions.  (Docs. 213, 214.)  The court prepared the electronic exhibits in its jury evidence system and its own proposed jury instructions.  On June 21, the court was prepared to begin voir dire.  There were more than 30 jurors in the courthouse waiting to be called for jury service in Defendant's trial.  Prior to calling the jury up to the courtroom, the court called this case to discuss the jury selection procedure.  At this time, Defendant stated that he intended to enter a guilty plea.  After discussing whether the parties were prepared to enter the plea that day, the undersigned recessed court for a short period to allow the parties to complete the plea documents.  The jury was not excused until after Defendant entered his guilty plea.

Defendant pleaded guilty to counts 2 (a violation of 21 U.S.C. § 841(a)) and 5 (a violation of 18 U.S.C. § 922(g)(1)).  At the plea hearing, which will be discussed in more detail throughout this order, the court informed Defendant of the maximum penalties associated with those counts.

Defendant stated he was satisfied with his counsel and that he understood that the court would determine his sentence.  Defendant's sentencing was set for September 15.

On August 18, Defendant filed a pro se motion to withdraw his guilty plea.  (Doc. 224.) Defendant argues that the court should allow him to withdraw his guilty plea because his counsel was ineffective in advising him to plead guilty, he was coerced into taking the plea offer, he was not informed of the potential sentence, his counsel failed to file certain motions, he is innocent, and the government fabricated evidence.  (*Id.* at 4-8.)  In response, the government argues that Defendant is again seeking to delay and frustrate the proceedings and that he should not be allowed to withdraw his plea.  (Doc. 225.)

The court held a hearing on the motion on September 15.  At the hearing, Defendant was provided an opportunity to inform the court of the reasons why his plea should be set aside. Defendant again offered the same reasons in his motion and additionally argued that he was under the influence of a substance at the time his plea was entered.  The court anticipated ruling on the motion to withdraw during the hearing with a written order to follow.  After hearing from Defendant, the court began addressing his stated arguments in his motion (and his contention that he did not have a clear mind) by citing to the record and reading from the plea colloquy.  Instead of allowing the court to make a full record on its ruling, Defendant began interrupting and arguing with the undersigned.  On several occasions, the undesigned instructed Defendant to stop talking and interrupting the court.  Defendant failed to comply with the court's admonition.  The court continued to make a record on Defendant's motion and Defendant continued to interrupt the undersigned and, ultimately, began yelling at the undersigned.  Due to Defendant's escalated interruptions and yelling, the court was required to adjourn the proceedings and have Defendant removed from the courtroom.

8

After a review of the record, the court finds that Defendant has not shown a fair and just reason to withdraw his guilty plea.

## II.     Standard

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a "defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal."  Defendant "bears the burden of establishing a fair and just reason." *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007).  The court is to consider the following seven factors when deciding whether Defendant has met his burden: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016).  The court need not consider all seven factors if the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors all weigh against Defendant. *Id.*  (citing *United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009)).

## III.    Analysis

After review of the factors, Defendant's motion, and the record in this matter, the court finds that Defendant has not met his burden.

<u>Innocence.</u>  The first factor is whether Defendant has asserted his innocence.  In his motion, Defendant merely states that he is innocent and does not elaborate.  He also stated during the hearing that he was innocent without further explanation.  A defendant "may satisfy the assertion-of-innocence factor by asserting legal innocence." *Hamilton*, 510 F.3d at 1214.  However, Defendant cannot merely assert a legal defense but must present a credible claim of legal

innocence.  *Id.*  A defendant may also claim factual innocence by claiming that he is actually innocent of the charges to which he pleaded guilty.  *Id.* at 1215.  Liberally construing his motion, Defendant may be raising both legal and factual innocence.

The court will first address legal innocence.  In his motion, Defendant argues that this court lacks jurisdiction over his prosecution, the warrant lacked probable cause, and that the court should have held an omnibus hearing.  Defendant's arguments are not new.  The court has already addressed the merits of these arguments and sees no need to revisit the issues.  (Doc. 211.)  The court finds that Defendant has not made a credible claim of legal innocence on these issues.

Defendant also argues that his right to a speedy trial was violated.  Defendant does not specifically identify how his right to a speedy trial was violated but generally argues that it has been over 600 days since he was charged with his crimes and, therefore, his right to a speedy trial was violated.  The Speedy Trial Act provides in part that the trial of a defendant who has entered a plea of not guilty shall commence within 70 days from the filing of the indictment or the date the defendant first appears on the charge, whichever is later.  *See* 18 U.S.C. § 3161.  Various periods are excluded from the 70-day clock, including any period of delay from a pretrial motion (from the filing of the motion through conclusion of the hearing, and a reasonable delay not to exceed 30 days during which a matter is under advisement) and a continuance granted upon "the ends of justice."  *See id.* at § 3161(h).

If a defendant is not brought to trial within the time limit of the Act, the indictment "shall be dismissed on motion of the defendant."  § 3162(a)(2).  "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and

on the administration of justice." *Id*. Thus, when the Speedy Trial Act is violated, dismissal is mandatory, but the court retains discretion to dismiss with or without prejudice.

Defendant made his first appearance on November 13, 2020.  The first period of exclusion began with the filing of a motion to continue by defense counsel on November 30, which was granted on December 1.  As a result, 17 days on the Speedy Trial clock elapsed from November 13 to November 30.  Next, Defendant filed a motion to dismiss and a motion to modify conditions of release on December 18.  Defendant's motions were heard on January 12, 2021 and struck from the record.  Therefore, another 16 days of nonexcludable time elapsed from December 2 (the day after the court entered the continuance order) to December 17 (the day before Defendant filed motions on December 18).  The time period from December 18 and January 12, 2021, is excluded from the speedy trial determination because the motions were pending.  Additionally, the time period from January 11 to April 5, 2021, was an excludable period under the Act because the court excluded this time period when it granted an ends of justice continuance.  (Doc. 44.)

On February 5, 2021, co-Defendant Matthew Crawford sought a continuance, which was granted by the court over Defendant's objection.  (Doc. 62.)  The order found that the period of time from April 5 to June 7, 2021 was excluded under the Act for all Defendants.  Although Lowe objected at the time, that objection was not sustained due to the need to keep all three Defendants together for trial, the extensive discovery involved, defense counsel's need to interview and locate additional witnesses, the difficulties in reviewing discovery due to COVID-19, and the need for additional time for counsel's effective preparation.  (Docs. 61, 62.)  Although Defendant generally argues in his motion that the speedy trial clock had run during the proceedings, Defendant makes no colorable argument that this court's order excluding this time period was erroneous.

Moreover, Defendant filed his own motion to continue pretrial deadlines on April 8. Although he did not join in the request to continue the trial, he did agree that the period of time could be excluded under the Act. (Doc. 74.) Additionally, co-Defendant Crawford filed a motion to suppress on April 29, 2021. (Doc. 76.) That motion remained pending until September 9, 2021. (Doc. 123.) Therefore, the period of time from April 29 to September 9 was also excludable under the Act. *See United States v. Vogl*, 374 F.3d 976, 983 (10th Cir. 2004) (discussing that under the Act, "[a]n exclusion for delay attributable to one defendant is applicable to all co-defendants.")(citing 18 U.S.C. § 3161(h)(7)). Due to the ends of justice continuance and the motions filed during this time period, the court finds that the time period from April 5 to September 9, 2021, is excludable under the Act.

On May 25, new counsel was appointed for Defendant. Defendant's new counsel, Mr. Pratt, moved for a continuance so that he could effectively prepare for trial. (Doc. 89.) Defendant agreed to the continuance which determined that the time period from May 27 to August 2 was excludable.[1] (Doc. 91.) On July 9, and September 20, Mr. Pratt sought additional continuances to which Defendant agreed. The court ordered that the period of time from August 2 to January 10 was excludable under the ends of justice exception. (Docs. 110, 129.) On October 27, Defendant filed several motions. (Docs. 136, 137, 138.) On November 10, Mr. Pratt filed a motion to withdraw. (Doc. 143.) The court held a hearing on November 29. At the hearing, the court

---

[1] Defendant generally argues that he did not agree to any of the motions for continuances filed in this case by his counsel. The court is not persuaded. It is clear from the record that on the single occasion that he did object to the continuance, counsel noted his objection. (Doc. 62.) On all other occasions, defense counsel indicated that Defendant agreed to the requested continuances, most of which occurred because **new** counsel needed to review the record and prepare for trial. To give credence to Defendant's assertion, this court would have to conclude that four different well-respected and experienced defense attorneys made misrepresentations in their motions. That it will not do. Moreover, this court has held numerous hearings in this case and at no point has Defendant asserted that these continuances were granted over his objections. Therefore, the court finds Defendant's general assertion that he objected to all continuances lacks credibility.

denied Mr. Pratt's motion.  Therefore, in addition to time being excluded under the orders granting the continuances, several days would have been excluded due to the filing of the motions.

On December 16, Defendant filed a motion to continue the trial.  (Doc. 149.)  The court held a hearing on December 20.  After the hearing, the court granted the motion for a continuance and excluded the time period from January 10, 2022, to February 7, 2022.  (Doc. 151.)  On January 19, the court held a hearing in which Defendant requested time to find new counsel and a continuance of the trial date.  That request was granted and the trial was continued to February 22. The time period from February 7 to February 22 was excludable under the Act as an ends of justice continuance.  (Doc. 161.)  On February 8, Mr. Pratt filed several motions in limine.  On February 10, Mr. O'Hara entered his appearance.  On February 15, Defendant's new counsel filed a motion to continue and Defendant agreed with the motion.  (Doc. 176.)  The court granted the motion and the time from February 15 to April 18 was excluded under the Act.  Moreover, the court did not rule on the motions in limine until April 12.  Therefore, the time period from February 8 to April 12 was also excluded due to the pending motions.  Defense counsel sought another continuance to review the evidence, interview witnesses, and prepare for trial.  (Doc. 190.)  Defendant agreed to the request.  The court granted the motion and the period of time from April 12 to June 21 was excluded.  (Doc. 192.)

After a review of the filings and orders in this case, only 33 days of non-excludable time have elapsed since Defendant made his initial appearance.  Although several motions to continue were granted in this case, Defendant only objected to one continuance at the time the motion was filed.  Defendant does not identify any other time in which he objected to a continuance and demanded to go to trial.  Rather, as is clear from the record, this court held numerous hearings over the course of these proceedings.  Although Defendant expressed his desire to ultimately have a

trial on the charges, Defendant also had numerous and ongoing issues with his counsel in this case which resulted in perpetual delays.  The elapsed time in this case was a period of approximately 19 months; however, Defendant had four different attorneys over that time period.  As is clear from the record, the delays in this case were primarily the result of Defendant's continued unreasonable disagreements with his appointed counsel which this court attempted to resolve by appointing different counsel - even allowing counsel that was not on the CJA panel in the hopes that Defendant could get along with his counsel of choice.  Defendant cannot be the cause for delay and also reap benefits of the delay by claiming a speedy trial violation.  Moreover, Defendant agreed to the need for the vast majority of continuances so that his defense counsel could prepare for trial and review discovery after entering in the case.  Finally, although this court granted continuances, other periods of time would have additionally been excluded due to the filing of numerous motions by Defendant himself or his counsel on his behalf.

Therefore, the court finds that Defendant has not made a showing of legal innocence on the basis that a motion to dismiss for a violation of speedy trial would have been granted.

Finally, the court finds that Defendant has not made a credible showing of factual innocence.  First, Defendant has not asserted in his motion that he is actually innocent of the charges to which he pleaded guilty or repudiated his admission of guilt that was stated on the record during the change of plea hearing.  *Hamilton*, 510 F.3d at 1215.  Notably, after the government recited the facts regarding Defendant's conduct involving the possession of heroin for the purpose of distributing it to others and possessing a firearm when he was a prohibited person, Defendant admitted to this conduct and stated that the government's recitation was "*definitely* true."  (Doc. 230 at 30) (emphasis supplied).  Defendant's mere proclamation of his innocence is not sufficient to make a credible showing on this factor after he readily agreed – while under oath

– with the account of his conduct during the plea hearing.  *See United States v. Byrum*, 567 F.3d 1255, 1265 (10th Cir. 2009) (a "defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty.")  Second, Defendant was in the residence on 2421 W Martha Street along with Whitfield at the time law enforcement executed a search warrant and found the firearms and drugs at the residence.  This is sufficient proof of the drug and gun offenses to which Defendant pleaded guilty.  *See Hamilton,* 510 F.3d at 1215.

Defendant's "change of heart" after entering his guilty plea is not enough to overcome his admission of guilt during the plea colloquy.  *United States v. Siedlik*, 231 F.3d 744, 749-50 (10th Cir. 2000).  Defendant has not made a credible claim of innocence in light of the evidence and the record.  This factor weighs against Defendant.

Prejudice to the government.  The second factor, prejudice to the government, also weighs against Defendant.  The government asserts that going to trial now could be prejudicial because Whitfield has already pleaded guilty and received probation.  As such, Defendant could gain a tactical advantage by having Whitfield's case finalized.  Further, a child witness is back in school and it would be disruptive to the child.  Also, the government had already prepared to go to trial in June and would have to undergo the same process again, including subpoenaing witnesses and making travel arrangements for a witness.  *See United States v. Jones*, 168 F.3d 1217, 1220 (10th Cir. 1999) (discussing that prejudice to the government includes having to disrupt work on current cases and issue additional subpoenas and pay for witness travel expenses); *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999).  This factor weighs against Defendant.

Delay in filing the motion.  The third factor, delay in filing the motion, also weighs against Defendant because Defendant waited until a few weeks before sentencing to file the motion and doesn't offer an explanation for the late filing.

<u>Inconvenience to the court and waste of judicial resources.</u>  The fourth and seventh factors, inconvenience to the court and waste of judicial resources, also weigh against Defendant. Defendant's actions in this case show that he has repeatedly delayed and vexatiously multiplied proceedings in this case.  Defendant has had four different attorneys throughout this case due to his difficulties with counsel and his continued insistence on legal theories that are utterly devoid of merit.  This caused the repeated postponement of his trial date and the court's adjustment of its calendar.  *See Jones*, 168 F.3d at 1220–21.  On the day of his guilty plea, a jury panel was waiting in the courthouse to begin trial.  The government had subpoenaed witnesses, including at least one who had traveled for the trial.  Defendant made no claims during the plea colloquy that he was being coerced into pleading guilty nor did he express dissatisfaction with his counsel.

Allowing Defendant to withdraw his guilty plea at this stage would be a great inconvenience to this court after it has held several hearings, called a jury, and was ready for trial on the day he entered his guilty plea.  It would also be a waste of judicial resources to call another jury and require court staff to prepare for the proceedings again.  *See id.*; *Siedlik*, 231 F.3d at 750 (court would be "substantially inconvenienced by multiplying proceedings after a knowing and voluntary plea of guilty has been entered").

These factors weigh against Defendant.

<u>Assistance of counsel.</u>  The fifth factor is whether Defendant had assistance of counsel. Defendant argues that his current counsel was ineffective and coerced him to plead guilty. Defendant's arguments are in direct conflict with the record and the statements Defendant made in open court at his plea hearing.

Defendant has had four different highly capable, experience, and respected attorneys represent him.  As set forth in the procedural history, Defendant has repeatedly complained about

16

his counsel and this court had several hearings addressing his complaints.  His current counsel, Mr. O'Hara, was appointed by the court after Defendant specifically requested that the court appoint him.  Although prior counsel refused to file several motions which were believed to be non-meritorious, Mr. O'Hara received permission to file these motions out of time so that he could foster better relations with Defendant.  Mr. O'Hara filed motions on Defendant's behalf which challenged this court's jurisdiction in this matter, the sufficiency of the search warrant that was executed at the Martha residence, and challenged certain discovery issues.  (Docs. 195, 196, 197, 198, 199, 200.)  The court denied those motions on the merits.  (Doc. 211.)  In his current motion, Defendant continues to attack the search warrant, this court's jurisdiction, the sufficiency of the evidence, and the preliminary proceedings, and argues that his counsel did not sufficiently attack these issues.  Defense counsel clearly raised these issues on Defendant's behalf even though they lacked merit.  Defendant offers no colorable argument as to what further motion his counsel should have filed regarding these issues.[2]

Defendant further argues that he asked his counsel to file a motion to dismiss on the basis of a Speedy Trial Act violation.  As discussed, however, such a motion lacks merit because 70 non-excludable days did not pass at the time of Defendant's change of plea.  Therefore, defense counsel was not ineffective for failing to file a motion to dismiss on that basis.

---

[2] Defendant also argues that the government fabricated evidence in the form of a coerced statement by a minor.  (Doc. 224 at 4-5.)  Defendant argues that this statement by the minor was used unlawfully to procure his arrest.  Defendant provides no credible evidence that a government agent acted unlawfully.  Moreover, Defendant fails to address how he has standing to challenge the lawfulness of the minor's interview.  Finally, Defendant's counsel did, albeit unsuccessfully, move to exclude this evidence on the basis that the witness was not credible.  (Doc. 171.)  The court ruled that the issues raised regarding the witness's credibility could be addressed during cross examination.  Defendant also makes general arguments that a *Brady* or *Giglio* violation occurred with respect to the child witness's statements.  (Doc. 224 at 3.)  Defendant's argument, however, is not clear and certainly does not sufficiently show that his counsel was ineffective for failing to raise a *Brady* or *Giglio* argument as to a witness statement.  Based on Defendant's motion in limine, his counsel was provided with discovery regarding this witness's statement.

Finally, Defendant argues that his counsel was ineffective for not fully explaining the plea agreement, telling him that he would be sentenced somewhere close to probation because that was the sentence of co-Defendant Crawford, for failing to tell him about the sentencing factors under 18 U.S.C. § 3553(a), and for failing to discuss the maximum penalty. (Doc. 224 at 1-2.) Defendant's assertions contradict his statements on the record during the plea hearing and the explicit language of the plea agreement.

Initially, Defendant asserts that his counsel rushed him through the plea agreement in ten minutes and did not fully explain the terms. (*Id.*) This statement is contradicted by the record. The record reflects that on the morning of trial Defendant advised Mr. O'Hara that he would like to take the plea deal that had been previously offered by the government. (Doc. 230 at 2.) As explained on the record, the plea agreement which Defendant agreed to was initially presented to Defendant in December 2021 through Mr. Pratt. It was then slightly modified in January 2022. The government then re-extended the offer through Mr. O'Hara in February 2022. (*Id.* at 3.) Therefore, Defendant's representation in his motion that he had only ten minutes to go through the plea agreement is contradicted by the statements in the change of plea hearing. It is also contradicted by the record in that the court adjourned for more than two hours after being informed that Defendant was going to plead guilty so that the parties could prepare for the plea hearing. (*Id.* at 3-4.) During that time, the jury waited in the courthouse.

Moreover, Defendant stated under oath that the plea agreement and the plea petition were "read by you or at least read to you word for word" and that he and Mr. O'Hara "had time to review and discuss all the documents or other evidence produced by the Government." (*Id.* at 17.) Had Defendant not had enough time to review the plea agreement, he should have raised this issue with the undersigned. Based on the record, which includes Defendant's statement under oath that he

had reviewed the plea agreement in January 2022, Defendant accepted a plea offer that had been presented to him through counsel on at least two prior occasions. Therefore, this claim lacks merit.

Defendant also asserts that his counsel was ineffective for telling him that he would be sentenced somewhere close to probation due to the sentence that Crawford received. Defendant further claims that he was not told about the statutory maximum, the statutory sentencing factors, and the impact of those factors on his sentence. Again, this claim lacks merit as it is directly contradicted by the record. The plea agreement contains several provisions regarding sentencing. The plea agreement states that Defendant understands that the maximum sentence which may be imposed as to the counts of conviction is "not more than twenty (20) years" for Count 2 and "not more than ten (10) years" for Count 5. (Doc. 218 at 1-2.) The plea agreement further states that the Court would apply the United States Sentencing Guidelines to calculate the applicable sentence and Defendant understands that the court will consider the conduct in any dismissed counts to calculate the offense level. (*Id.* at 3.) The agreement further states that Defendant understands that the sentence will be determined "solely by the United States District Judge." (*Id.* at 5.) During the plea hearing, Defendant stated that he understood that the sentence was to be determined by the undersigned. The court explained in detail how Defendant's sentence would be determined. The court stated that Defendant's sentencing guidelines range would be calculated based on the seriousness of the offense and his criminal history. (Doc. 230 at 20.) And that a prison sentence would be lengthier for a more serious offense and an extensive criminal history. The court then explicitly asked Defendant if his attorney had discussed the application of the sentencing guidelines to his case and the factors which would increase the length of his sentence under the guidelines. Defendant replied that he had. (*Id.* at 21.) The court then explained the statutory factors under 18 U.S.C. § 3553(a). Specifically, the court said that it would consider all of the

statutory factors and listed out all of those factors.  Notably, the court then advised Defendant as follows:

> THE COURT: Although your lawyer has estimated the likely range of your sentence based on his professional judgment and experience, neither your lawyer nor anyone else can say for certain what guideline sentencing range applies to your case until after the presentence investigation has been completed and the Court has resolved any disputed issues. Pardon me. Therefore, do you understand the maximum sentence I mentioned earlier still could apply despite your lawyer's estimates and despite the terms of your plea agreement?
>
> THE DEFENDANT: Yes, sir.

(Doc. 230 at 22-23.)

It is clear based on the language in the plea agreement and the plea colloquy, that Defendant understood that his sentence would be determined by the court and that the court would review the guidelines and all of the statutory factors in fashioning a sentence.  Defendant's assertion that his counsel was ineffective for failing to explain the sentencing factors to him or allegedly asserting that his sentence would be based on the sentence of his co-Defendant is contradicted by Defendant's statements on the record that he understood the court would fashion a sentence in the manner explained to him and that his counsel reviewed the guidelines and the sentencing factors with him.  Further, the Tenth Circuit has consistently held that a miscalculation of the guideline range or erroneous estimation of a defendant's sentence by defense counsel is not constitutionally deficient performance rising to the level of ineffective assistance of counsel. *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993); *United States v. Williams*, 919 F.2d 1451, 1456 (10th Cir. 1990).

Moreover, contrary to Defendant's assertions, the record clearly reflects that Defendant was informed about the statutory maximums and the potential for a consecutive sentence.  The record reflects that the court discussed the statutory maximums on both counts as set forth in the

plea agreement.  (Doc. 230 at 13-14.)  The court further discussed that Defendant's sentences could run consecutively.  (*Id.* at 14.)  In response, Defendant stated that he understood that his sentences on counts 2 and 5 could be run consecutively.

Therefore, Defendant's assertions as to his counsel's deficiencies with respect to his potential sentence do not provide a sufficient basis to set aside Defendant's plea.  The court finds that the record reflects that Defendant has had assistance of counsel throughout these proceedings.

<u>Knowing and voluntary plea.</u>  The sixth factor is whether his plea was knowing and voluntary.  Defendant argues that his counsel coerced him to take the plea deal and that it was not knowing and voluntary because the court failed to advise him of the maximum possible penalty of 30 years.  (Doc. 224 at 8.)  As discussed herein, the court accurately advised Defendant of the statutory maximum sentences.  The court further advised Defendant that his sentences could be run consecutively.  Therefore, Defendant was informed of the maximum possible penalty and his argument lacks merit.

Defendant also asserted during the hearing that he was on prescription drugs on the date of the plea hearing and that he had informed the court that he had taken pills that morning.  Defendant did not raise this issue in his motion.  Again, however, his argument is directly contradicted by the record.  During the plea colloquy, the court discussed Defendant's state of mind and his prescriptions.  Defendant informed the court of the medications that he takes for his back, knee, and his bipolar disorder.  (Doc. 230 at 9.)  The court reviewed the plea petition which also sets forth these medications.  (*Id.*; *see also* Doc. 217 at 4.)  The court then asked defendant whether "any of the medications you're taking affect your ability to think, reason, to understand these proceedings, or to assist your lawyer in presenting your defense?"  (Doc. 230 at 11.)  In response, Defendant stated, "definitely not, sir.  I comprehend very well."  (*Id.*)  Defendant then stated that

he was "definitely" able to think clearly on the day of the plea.  (*Id.*)  Based on this record, Defendant's current claim that he was under the influence of his medication to the extent that his plea was involuntary lacks merit.  The plea colloquy shows that Defendant understood the proceedings, and clearly and succinctly answered the questions posed to him.  Defendant's late claim that he was unable to understand the proceedings due to his medication is just another attempt to thwart these proceedings.

Finally, although Defendant asserts that he was "coerced" into pleading guilty, the record clearly demonstrates that Defendant freely and voluntarily pleaded guilty.  *See Jones*, 168 F.3d at 1220.  The plea agreement states that Defendant had "sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided.  Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion."  (Doc. 218 at 8.)

During the plea colloquy, the court advised Defendant as to his right to go to trial, to which defendant responded that it was in his "best interest[] to take a plea." (Doc. 230 at 17.)  In response to the court's question as to whether the decision to plead guilty was his and his alone, Defendant responded, "yes, sir."  (*Id.* at 30.)  In response to the court's question as to whether Defendant was "entering this plea of guilty freely and voluntarily because you believe you are guilty as charged," Defendant again stated, "yes, sir."  (*Id.* at 31.)  The court also asked Defendant if anyone had forced or threatened him in any way to get him to plead guilty and Defendant stated, "no, sir." (*Id.*)  Near the conclusion of the hearing the court also asked Defendant if he had any questions of the undersigned or for his counsel prior to the court receiving his plea.  In response, Defendant

stated, "no sir, your honor, you know how long it's been my fight, it's definitely time to get this over with. No, sir." (*Id.*)

"If Defendant was being coerced into pleading guilty, he should have so stated to the" undersigned instead of responding as he did. *See Jones*, 168 F.3d at 1220. Defendant had ample time to inform the court of any undue coercion to enter his guilty plea. The court finds that Defendant entered his plea knowingly and voluntarily.

## IV.  Conclusion

Defendant's motion to withdraw his guilty plea (Doc. 224) is DENIED. Defendant's sentencing hearing is set for October 31, 2022 at 2:00 p.m.

IT IS SO ORDERED.  Dated this 23rd day of  September 2022.

  s/ John W. Broomes           
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
